AYRES, Judge.
This is an action for damages for the alleged breach of a purported contract.
Plaintiff alleged that by verbal contract subsequently acknowledged in writing he agreed to manufacture and deliver to defendant two-and-a-half million board feet of lumber, mill run, at a price of $60 per thousand board feet. It was further alleged that defendant also agreed to furnish and install the necessary additional machinery in a sawmill owned by plaintiff for the purpose of manufacturing said lumber. The further allegation is made that after plaintiff cut and delivered 311,982 board feet of this lumber, for which he was paid $15,500, defendant refused to accept further deliveries. Plaintiff’s claim consists of $3,218.92 as an alleged deficiency in the price of the lumber shipped, the alleged loss of profits anticipated on the remainder of the order calculated at $15 per thousand and $12,-000.00 allegedly expended by plaintiff in equipping said mill.
The defendant urges a twofold defense: (1) there was no contract or agreement as alleged and (2) that all transactions concerned in this action were with the Orthopedic Equipment Company, a corporation of which defendant is president and of which he acted as representative, and that, accordingly, in no event, is there any personal liability on his part.
After trial, plaintiff’s demands were rejected and he has appealed.
The facts clearly disclose that the only verbal agreement plaintiff could have had was an order from the Orthopedic Equipment Company for the purchase of one million board feet of lumber at $50 per thousand board feet. After delivery of the quantity heretofore mentioned, for which he was paid or advanced $15,500, plaintiff discontinued his operations, contending he could not furnish the lumber for less than $60 per thousand. Plaintiff admits that no agreement was reached as to a price above *223 $50. His letter of April 21, 1957, clearly so indicates when he says:
“ * * * I have talked to Mr. Sae-mann several times in regard to advances to keep us going until we have made a price agreement. * * * ” (Emphasis supplied.)
When questioned as a witness,
“Did you and he agree on the price that was to be charged for this lumber that you were to ship for him ?’’
he replied,
“I won’t say that we agreed. I always said that I wouldn’t cut it; that I would try for .Sixty. I didn’t know whether I could cut it for more than that or less than that.”
After discussing the price and getting the opinion of other sawmill operators, plaintiff concluded he could make a fair profit at $60 per thousand. This information, he communicated to the defendant, but that
“He would never commit himself to saying that he would pay Sixty.”
Thus, it clearly appears no agreement was ever reached as to the payment of $60 per thousand for the lumber to be manufactured by plaintiff and shipped to the defendant. There was no meeting of the minds on this very essential element so as to create a contract between the parties.
The second of the defenses urged is equally meritorious. All the transactions were conducted in the name of the corporation as established, not only in the defendant’s testimony but through plaintiff’s correspondence as well. The record leaves little room, if any at all, for doubt that the defendant acted solely in a representative capacity and for and on behalf of the corporation, of which he was president, and not in his personal capacity.
The judgment appealed is therefore affirmed at appellant’s cost.
Affirmed.